FILED
United States Court of Appeals
Tenth Circuit

October 9, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EVERETT MICHAEL
HARRINGTON,

Defendant - Appellant.

No. 12-1207

(D. Colorado)

(D.C. No. 1:11-CR-00026-JLK-2)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Defendant and appellant Everett Michael Harrington appeals the sentence imposed upon him for possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1). For the following reasons, we affirm his sentence.

**BACKGROUND**

On October 11, 2010, Mr. Harrington and two other individuals burglarized the ACME Pawn Shop in Colorado Springs, Colorado. They stole twenty-nine firearms, all of which were manufactured outside of Colorado and had therefore traveled in interstate commerce before Mr. Harrington came into their possession.

On October 19, 2010, law enforcement agents, acting undercover, arranged to purchase two firearms from Mr. Harrington. He was not, however, arrested at that time. On October 20, 2010, Mr. Harrington used one of the stolen firearms to shoot and injure a woman with whom he had a disagreement after a night of heavy drinking at a bar. He was thereafter arrested and charged with attempted murder. After being advised of his <u>Miranda</u> rights, Mr. Harrington waived those rights and admitted to having stolen and to possessing the twenty-nine firearms. He did not dispute the attempted murder charge. As a result of the stolen firearms and the attempted murder charges, Mr. Harrington was subject to both federal and state prosecution.

On July 20, 2011, Mr. Harrington pled guilty in Colorado state court to "Attempted First Degree Murder–Extreme Indifference" and was sentenced to forty years' imprisonment. On February 2, 2012, Mr. Harrington pled guilty in federal court, pursuant to a plea agreement, to possessing a firearm after a felony conviction.[1] While Mr. Harrington was initially also charged with burglary of the pawn shop, the government agreed to dismiss that charge in exchange for Mr. Harrington's guilty plea. In the plea agreement, the government and Mr. Harrington agreed, inter alia, that Mr. Harrington's sentence for the felon-in-possession charge should be served concurrently with his state sentence for attempted murder.

In preparation for sentencing Mr. Harrington under the advisory United States Guidelines Commission, Guidelines Manual ("USSG"), on the felon-in-possession conviction, the United States Probation Office prepared a presentence report ("PSR"). Because of his status as a previously convicted felon involving a crime of violence (the felony menacing conviction), the PSR calculated Mr. Harrington's base offense level as twenty pursuant to USSG §2K2.1(a)(4). After various upward adjustments for specific offense characteristics,[2] as well as a

_____

[1]Mr. Harrington had been previously convicted in Colorado state court of felony menacing, a crime of violence.

[2]The PSR applied a six-level increase because the instant offense involved twenty-five to ninety-nine firearms; a two-level increase because the firearms were stolen; and a four-level increase because Mr. Harrington used or possessed

(continued...)

downward adjustment for acceptance of responsibility, Mr. Harrington's total adjusted offense level was twenty-nine.

In calculating this total adjusted offense level, the PSR considered the cross-references contained in USSG §2K2.1(c)(1)(A), which provides: "If the defendant used or possessed any firearm . . . in connection with the commission or attempted commission of another offense, . . . apply § 2X1.1(a) (Attempt, Solicitation or Conspiracy) in respect to that other offense, if the resulting offense level is greater than [the total offense level already calculated (twenty-nine in this case)]." As part of its calculation (the only part relevant to this appeal), the PSR considered whether calculation of the total offense level under the federal attempted murder Guidelines provisions would yield an offense level greater than twenty-nine.[3] Because it did not, the PSR did not utilize any cross-reference to calculate Mr. Harrington's total offense level.

Mr. Harrington's criminal history category was VI, based on his nine prior felony convictions. With a total adjusted offense level of twenty-nine, the USSG

_____

[2](...continued)
the firearms in connection with another felony offense (the burglary of the pawn shop).

[3]As the government points out, the PSR appears to have assumed that Mr. Harrington's conduct underlying the attempted murder charge would be equivalent to attempted second-degree murder under federal law, even though he was charged with attempted first-degree murder under Colorado law. See USSG §2A2.1 (establishing a base offense level of thirty-three for attempted first-degree murder and twenty-nine for all other forms of attempted murder).

advisory range was 151 to 188 months' imprisonment. Because the statutorily authorized maximum sentence was 120 months (less than the advisory Guidelines range), the Guidelines range for the felon-in-possession conviction became 120 months. The PSR also noted that "[p]ursuant to § 5G1.3(c), (Policy Statement) 'In any case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.'" PSR, ¶ 120, R. Vol. 2 at 31 (quoting USSG §5G1.3(c), p.s.).

The PSR ultimately recommended that Mr. Harrington receive a 120-month sentence for the felon-in-possession charge, but that sixty months be served concurrently with his forty-year state sentence and sixty months consecutively to that sentence.

The government filed a response to the PSR, indicating it had no objections to it. Mr. Harrington filed objections to the PSR, in which he emphasized his assistance to the government in trying to locate the stolen firearms. With respect to the forty-year state sentence for attempted murder, Mr. Harrington stated as follows:

> Section §5G1.3 of Chapter Five of the guidelines addresses imposition of a sentence on a defendant already subject to an undischarged sentence. The guidelines propose that if there was an increase in offense level based on the consideration of the undischarged sentence as relevant conduct, then the sentence for the

-5-

instant offense should be imposed concurrently. §5G1.3(b). If this was not the case, §5G1.3(c), the application notes propose that the court should consider among other factors both when the offender will be parolable on a determinate sentence and the time actually likely to be served before release. §5G1.3(c), Application Note 3(A).

Objections and Resp. to PSR at 2, R. Vol. 1 at 28. The remainder of his objection relates to the length of time he is actually likely to serve on his state sentence, and the impact of a consecutive federal sentence on opportunities and conditions while in state prison. He made no specific argument about the application of USSG §5G1.3 to the calculation of his federal sentence and whether it mandates a consecutive or concurrent sentence.

At the sentencing hearing, both the government and Mr. Harrington requested that the court impose a 120-month sentence, to be served concurrently to the forty-year state sentence. Government counsel stated, "the parties are able to agree to the maximum punishment because of the nature of the offense, the number of firearms that were involved, and the criminal history of this defendant, and unfortunately his subsequent conduct with one of the firearms that was stolen." Tr. of Sentencing Hr'g at 4, R. Vol. 3 at 18. Mr. Harrington argued that the length of time he would actually serve on his state sentence, as well as the adverse effects occasioned by a federal detainer looming over his state sentence, warranted a concurrent federal sentence. Mr. Harrington did not argue that USSG §5G1.3(b) compelled the district court to impose the federal sentence concurrently with the state sentence.

In imposing sentence, the district court stated it had considered the PSR, the arguments of both parties, and the question of whether the federal sentence should be concurrent with or consecutive to the state sentence. The court also particularly noted Mr. Harrington's criminal history, and his minimization of his past crimes and his responsibility for those crimes. The court further observed that, were it to impose the federal sentence to run concurrently with the state sentence, that "would mean that this federal crime amounts to absolutely nothing" even though Mr. Harrington had caused weapons to be "out on the street" where they would "cause problems." Tr. of Sentencing Hr'g at 9, R. Vol. 3 at 23. Accordingly, stating that it was "more concerned with the danger that [Mr. Harrington] present[s] to society," the court sentenced him to eighty-four months' imprisonment, to be served consecutively to his forty-year state sentence. The court noted that it was "making the sentence less than that provided by the guidelines . . . because of . . . the lengthy sentence that he is already serving in the State of Colorado." Id. at 11.

Mr. Harrington appeals that sentence, arguing that the district court committed "both procedural and substantive error by not considering U.S.S.G. § 5G1.3(b) before ordering that Mr. Harrington's federal sentence run consecutively to his state sentence." Appellant's Op. Br. at 12.

**DISCUSSION**

We review federal sentences under an abuse of discretion standard, asking if the sentence imposed was both procedurally and substantively reasonable. See Gall v. United States, 552 U.S. 38, 46 (2007); United States v. Sayad, 589 F.3d 1110, 1116 (10th Cir. 2009). A sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Gall, 552 U.S. at 51. "Substantive reasonableness, on the other hand, involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in § 3553(a)." Sayad, 589 F.3d at 1116 (brackets and internal quotation marks omitted).

**I. Procedural Reasonableness**

Mr. Harrington argues that the district court committed procedural error in failing to make "even a passing reference to U.S.S.G. §5G1.3(b)," Appellant's Op. Br. at 13, and in failing to apply that provision and impose his federal sentence to run concurrently with his state sentence.

USSG §5G1.3(b) provides in relevant part: "[i]f . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant

offense . . . and . . . was the basis for an increase in the offense level . . . the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment." Subsection (b) indicates that "relevant conduct" is understood by reference to USSG §1B1.3(a)(1-3). Relevant conduct under these subsections includes (1) "all acts and omissions committed . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction," (2) "all acts and omissions described in [subsection (a)(1)] that were part of the same course of conduct or common scheme of plan as the offense of conviction," and (3) "all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) . . ., and all harm that was the object of such acts and omissions." USSG §1B1.3(a)(1-3).

The primary aim of §5G1.3(b) is to "ensure no defendant is punished twice for the same crimes." United States v. Contreras, 210 F.3d 1151, 1153 (10th Cir. 2000). Thus, §5G1.3(b) is meant to "credit[] for guidelines purposes [] defendants who have already served time–generally in another jurisdiction–for the same conduct or course of conduct." United States v. Johnson, 40 F.3d 1079, 1082 (10th Cir. 1994) (internal quotation marks omitted) (first alteration in original).

Mr. Harrington argues that he has satisfied both parts of §5G1.3(b), in that his attempted murder conviction constituted relevant conduct to his felon-in-possession conviction and it was the basis for an increase in his offense level.

Thus, he argues that §5G1.3(b) applied to the sentencing determination in his case, and the "district court erred by improperly calculating [his] sentence." Appellant's Br. at 16. Alternatively, he argues that even if §5G1.3(b) does *not* apply to his sentencing determination, "the district court was obligated to make that finding on the record and [it] erred by inadequately explaining the chosen sentence." Id.

"When a party challenges a sentence for procedural reasonableness, our standard of review is ordinarily abuse of discretion, under which we review de novo the district court's legal conclusions regarding the guidelines and review its factual findings for clear error." United States v. Gantt, 679 F.3d 1240, 1246 (10th Cir. 2012), petition for cert. filed, Sept. 10, 2012 (No. 12-6367). In this case, however, Mr. Harrington did not specifically object to the district court's failure to apply USSG §5G1.3(b). While he, and the court, acknowledged the Guideline's existence, no one averred that it should be applied to require Mr. Harrington's federal sentence to run concurrently with his state sentence. "If . . . Defendant did not preserve the procedural challenge below, we review only for plain error." Gantt, 679 F.3d at 1246.[4]

_____

[4]In his reply brief, Mr. Harrington cites our case, United States v. Tisdale, 248 F.3d 964 (10th Cir. 2001), for the proposition that he in fact adequately raised the issue of concurrent versus consecutive sentences in the district court, so that he preserved the issue on appeal. Assuming Tisdale supports that argument, we would review for an abuse of discretion, analyzing the district court's legal conclusions de novo and its factual findings for clear error. Were we to apply

(continued...)

Under plain error review, Mr. Harrington must satisfy four requirements to prevail: "(1) the district court committed error; (2) the error was plain–that is, it was obvious under current well-settled law; (3) the error affected the Defendant's substantial rights; and (4) 'the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting United States v. Dazey, 403 F.3d 1147, 1174 (10th Cir. 2005)).

We agree with the government that the district court committed no error in not applying USSG §5G1.3(b) to Mr. Harrington's federal sentence. The conduct underlying Mr. Harrington's state sentence for attempted murder was not relevant conduct under USSG §1B1.3(a)(1)-(a)(3), and it was not the basis for an increase in Mr. Harrington's offense level. It therefore failed to meet either prong of §5G1.3(b). That conduct is not relevant conduct because it (committed on October 20, 2010) was not part of Mr. Harrington's acts or omissions in his conduct involving being a felon-in-possession (committed on October 11, 2010). Furthermore, his attempted murder was excluded from grouping under USSG §3D1.2(d) and was not part of the same "course of conduct" nor was it harm stemming from the felon-in-possession conduct.[5]

---

[4](...continued)
that standard here, we would reach the same result, as the district court applied the Guidelines correctly and did not abuse its discretion.

[5]Mr. Harrington suggests that our decision in United States v. Kieffer, 681 F.3d 1143 (10th Cir. 2012) provides support for his argument that the district

(continued...)

Additionally, the attempted murder conviction was not the basis for an increase in Mr. Harrington's offense level. Mr. Harrington argues that neither the Guidelines nor Tenth Circuit precedent specifically define the word "basis." He provides no persuasive reason to depart from the ordinary, common-sense meaning that Mr. Harrington's attempted murder conviction would be the "basis" for an increase in his offense level if it caused his offense level to increase, or at least substantially contributed to such an increase. The PSR explicitly did not increase Mr. Harrington's offense level by reference to his attempted murder conviction. It did, however, explicitly increase Mr. Harrington's offense level based on the burglary of the pawn shop. The district court adopted the PSR's findings and conclusions with respect to offense level. Thus, there is no argument that Mr. Harrington satisfied the second part of USSG §5G1.3(b). It does not matter that government counsel stated in the sentencing hearing that the government had agreed to the maximum statutory sentence for Mr. Harrington's felon-in-possession charge, in part because of his attempted murder conduct, because it is clear from the PSR and the remainder of the record that the

---

[5](...continued)
court erred in concluding that his conduct relating to the attempted murder charge was not relevant conduct for purposes of his federal sentence. Kieffer is distinguishable. We held in that case that the district court erred in *not* considering as relevant conduct various actions which occurred in different jurisdictions but were all part of a common and ongoing wire and mail fraud scheme. That is not the case here, where Mr. Harrington happened to use a previously stolen (and illegally possessed) firearm in a subsequent independent crime.

-12-

attempted murder charge did not in fact increase Mr. Harrington's offense level. Mr. Harrington provides no pertinent and binding authority suggesting that we should interpret the word "basis" in any different manner.

Finally, we discern no error in the district court's failure to explain in detail why USSG §5G1.3(b) did *not* apply to Mr. Harrington's sentence. As indicated above, the provision clearly was inapplicable. We do not expect district courts to explain why they do not apply every Guidelines provision which is inapplicable to a particular defendant's sentence.

The district court accordingly committed no procedural error, let alone a plain error, in not utilizing USSG §5G1.3(b) in sentencing Mr. Harrington and in imposing his federal sentence consecutive to his state sentence.

## II.  Substantive Reasonableness

"Under a deferential-abuse-of-discretion standard, we deem a sentence unreasonable only if it is 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" Gantt, 679 F.3d at 1249 (quoting Sayad, 589 F.3d at 1116). We take into account "the totality of the circumstances," Gall, 552 U.S. at 51, but a sentence within the advisory Guidelines range is "entitled to a rebuttable presumption of [substantive] reasonableness." United States v. Halliday, 665 F.3d 1219, 1224 (10th Cir. 2011).

Mr. Harrington argues that the district court imposed a substantively unreasonable sentence because the court was narrowly focused on his criminal history, his minimization of his prior crimes, and the fact that he had attempted a murder, which the district court characterized as a "total abandonment." Tr. of Sentencing Hr'g at 22, R. Vol. 3 at 22. We disagree.

As we have stated, "[t]he sentencing court . . . is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." United States v. Cordova, 461 F.3d 1184, 1189 (10th Cir. 2006) (internal quotation marks omitted). The district court clearly considered all the relevant factors; it highlighted some of them, but it was not required to do more. The court also explicitly stated that it was imposing its sentence because it was concerned about Mr. Harrington's danger to society, and it expressed a need to have the federal sentence be meaningful.

In short, the district court did not act arbitrarily or capriciously or whimsically, and its sentence was reasonable under the relevant sentencing factors.[6] We conclude the district court did not abuse its discretion in deciding

---

[6]Mr. Harrington also argues that the imposition of a consecutive sentence causes him to be subject to a sentence much longer than, and, in his view disparate from, the sentence he would have received had he only been sentenced under federal law for both convictions. He overlooks that the disparities

(continued...)

that Mr. Harrington's eighty-four month sentence should run consecutively to his state sentence.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence in this case.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

---

[6](...continued)
prohibited under 18 U.S.C. § 3553(a) are disparities between different defendants in similar situations; the disfavored disparities are not between the sentence he received and a hypothetical sentence he might have received had he been charged differently.